HARRY MITCHELL GOLDSTEIN AND JUDY BELLE GOLDSTEIN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Goldstein v. Commissioner
Docket No. 22652-83.
United States Tax Court
T.C. Memo 1986-339; 1986 Tax Ct. Memo LEXIS 263; 52 T.C.M. (CCH) 9; T.C.M. (RIA) 86339; August 4, 1986. Kathryn Muir Kay, for *265 the petitioners. John B. Franklin, for the respondent. SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, Judge: Respondent determined a deficiency of $12,051.71 in petitioners' Federal income tax for 1980. After concessions, the remaining issues are: (1) whether petitioners' Amway activities in 1980 constituted an "activity not engaged in for profit" within the meaning of section 183, [1] and (2) what amount, if any, are petitioners entitled to treat on their 1980 return as deductible business expenses, investment credit, and child care credit. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation and exhibits attached thereto are incorporated herein by reference. Petitioners, Harry Mitchell Goldstein and Judy Belle Goldstein, husband and wife, resided in Middletown, Ohio at the time of the filing of their petition. During all of 1980, both petitioners were employed by *266 the General Electric Company ("General Electric") and received wages in the respective amounts of $29,297.33 and $18,997.41. They filed a joint income tax return for 1980 with the Internal Revenue Service Center, Cincinnati, Ohio. From January to March 1980, petitioners explored the possibility of becoming involved with Amway, the well known manufacturer and distributor of soaps, health and home care products, furniture, furnishings, clothing and a variety of other items. In March they became distributors for Amway and throughout the remainder of 1980 they attempted to persuade their relatives and friends to also become Amway distributors under their supervision. It was petitioners' hope and expectation that these relatives and friends would in turn recruit additional distributors since under the Amway system petitioners would be entitled to receive a percentage on all sales made by their subdistributors. Attempts by petitioners to make direct sales of Amway products seldom occurred and was considered a secondary activity. Petitioners led an active social life and most of their Amway recruiting activities were conducted during dinners, lunches, drinks, softball games, barbecues *267 or vacations and all of such activities were with relatives, friends, or acquaintances. Additionally, during visits by relatives and friends, petitioners would on occasion mention Amway products and distributorships. Since these were primarily social functions Amway activities were relegated to minor roles in both time and in the focus of the conversations. A minimal amount of time was spent in about ten to twenty Amway presentations at petitioners' home. During 1980, petitioners purchased Amway merchandise having a suggested retail value of $779 from another distributor for $576. Most of this merchandise was consumed by petitioners and their children. However, some items were given to relatives, some were used for product demonstrations, and a few were resold by petitioners. On their 1980 return, petitioners reported a gross profit in the amount of $203 (gross sales of $779 minus cost of goods sold of $576) from their Amway activities and claimed business expenses of $32,432 to arrive at a net loss of $32,229. The business expenses claimed by petitioners were as follows: Advertising
$ 75.00
Bad Debts From Sales
or Services
16.00
Bank Charges
30.00
Car and Truck Expenses
5,345.00
Depreciation
3,138.00
Dues and Publications
172.00
Freight
36.00
Insurance
800.00
Interest on Business
Indebtedness
3,481.00
Laundry and Cleaning
232.00
Legal and Professional
Services
1,779.00
Office Supplies
313.00
Postage
87.00
Repairs
133.00
Supplies
64.00
Taxes
498.00
Telephone
713.00
Travel and Entertainment
967.00
Utilities
405.00
Educational Supplies
320.00
Continuing Education
198.00
Training Demonstrations
3,172.00
Sales Promotions
7,938.00
Business Gifts
960.00
Conventions -- Seminars
27.00
Incentive Awards
135.00
Security
303.00
Client Entertainment
215.00
Displays -- Samples
86.00
Parking
73.00
Operating Expenses
556.00
Miscellaneous
165.00
TOTAL
$32,432.00
*268 On their 1980 return, petitioners also claimed an investment tax credit of $563 on a pick up truck allegedly used in their Amway business. At trial and on brief petitioners contended that in connection with their Amway activities they had additional business deductions of $6,200 and $450 for entertainment expenses and wages paid to their children as well as a child care credit under section 44A. Respondent contends that none of the deductions and credits claimed by petitioners are allowable. OPINION Business Expenses
Respondent's primary contention with respect to this issue is that the expenditures were incurred in an activity not engaged in for profit. Consequently, respondent concludes that petitioners are not entitled to deduct the Amway losses under section 183. Petitioners contend that their Amway activities were engaged in for profit, that section 183 is not applicable, and that their expense deductions are allowable in full. Section 183(a) provides that if an individual's activity constitutes an activity "not engaged in for profit" any expense arising out of such activity shall not be allowed as a deduction except as provided in section 183(b). An "activity *269 not engaged in for profit" is defined in section 183(c) as "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 [trade or business expense] or under paragraph (1) [expenses for the production or collection of income] or (2) [expenses for management, conservation or maintenance of income producing property] of section 212." If the activity is not engaged in for profit, section 183(b) requires that the expenses be divided into two groups. First, section 183(b)(1) allows the deduction in full of those expenses which are not dependent upon a profit motive, e.g., interest and taxes. Then, under section 183(b)(2) the balance of the expenses are allowed, but only to the extent that the gross income derived from the activity exceeds the deductions allowed under section 183(b)(1). To constitute a trade or business under section 162 an activity must "be entered into, in good faith, with the dominant hope and intent of realizing a profit, i.e. , taxable income therefrom." *270 Hirsch v. Commissioner,315 F.2d 731, 736 (9th Cir. 1963), affg. a Memorandum Opinion of this Court. See also Hager v. Commissioner,76 T.C. 759, 784 (1981), and cases cited therein. The expectation of a profit need not be a reasonable one. It is sufficient if there is a bona fide objective of making a profit. Fox v. Commissioner,80 T.C. 972, 1006 (1983), affd. without published opinion 742 F.2d 1441 (2d Cir. 1984), affd. sub nom. Barnard v. Commissioner,731 F.2d 230 (4th Cir. 1984), affd. without published opinions sub nom. Hook v. Commissioner,Kratsa v. Commissioner,Leffel v. Commissioner,Rosenblatt v. Commissioner,Zemel v. Commissioner,734 F.2d 5-7, 9 (3d Cir. 1984); Hager v. Commissioner,supra.Whether there is an intention to make a profit is one of the facts to be resolved from all the surrounding circumstances. Golanty v. Commissioner,72 T.C. 411, 426 (1979), affd. in an unpublished opinion *271 647 F.2d 170 (9th Cir. 1981); Dunn v. Commissioner,70 T.C. 715, 720 (1978), affd. 615 F.2d 578 (2d Cir. 1980). In making the determination as to intent, objective facts are to be given greater weight than the parties' statements of their intent. Fox v. Commissioner,supra at 1007. Section 1.183-2(b), Income Tax Regs., contains a nonexclusive list of factors considered as being relevant to a determination of whether an activity was engaged in for profit. Golanty v. Commissioner,supra.These factors are as follows: (1) the manner in which the taxpayer carries on the activity, (2) the expertise of the taxpayer or his advisors, (3) the time and effort expended in carrying on the activity, (4) the expectation that assets used in the activity might appreciate in value; (5) the success of the activity and of the taxpayer in carrying on other similar or dissimilar activities, (6) the taxpayer's history of income or losses with respect to the activity, (7) the amount of profits, if any, which were earned, (8) the financial status of the taxpayer, and (9) elements of personal pleasure or recreation. *272 From a close examination of the record as a whole, we are satisfied and so find that the Amway activities engaged in by petitioners during 1980 did not constitute a trade or business, but instead were undertaken by petitioners primarily, if not exclusively, in order to obtain tax deductions and credits. First, petitioners' Amway activities were not carried on in a businesslike manner because they failed to keep proper financial records of such activities, their only records being cancelled checks from a personal checking account, entries on a calendar, some personal bills and the order forms for Amway products purchased at a cost of $576. Furthermore, although they claimed to be in a retail sales business, they failed to maintain any inventory records. Secondly, we note that both petitioners had full time employment at substantial salaries with General Electric, had no expertise in the retail sales business, and devoted only a minimal amount of time to their Amway activities. Of this time, only a minor portion was devoted exclusively to Amway presentations and sales. Instead, petitioners maintained active social lives and discussed Amway sales and distributorships only in *273 a casual way at various social functions. Thirdly, petitioners had very little success in obtaining other distributors or selling Amway products. As of the date of trial, petitioners had never shown a profit and had only persuaded one individual to become an Amway distributor. Even if we were to believe petitioners' claims, which we do not, petitioners' 1980 sales were minimal at best. For instance, they claim to have sold $779 of Amway products at a cost of $576 for a gross profit of $203. However, petitioners' calendar which they presented as part of their business records indicates that only three sales were made during the entire year. When these are cross referenced to the order forms dated near or on the date of the sales, petitioners' gross sales are computed to be $173.39 with a cost of goods sold of $132.74 for a gross profit of $40.65. The other claimed sales are attributable to the products purchased by petitioners for their personal use, for samples given to their relatives and for product demonstrations. Consequently, petitioners' Amway activities were an utter failure when viewed from the standpoint of profits and their conduct overall with respect to such activities *274 leads to the conviction that their primary objective was to obtain income tax deductions and credits to offset their wages from General Electric. Therefore such activities were not entered into for profit under section 183. Since petitioners have conceded that in 1980 they incurred no expenses for interest or taxes in connection with their Amway activities, we conclude that petitioners had expenses, including cost of goods sold, equal to $173.39 which are allowable in 1980 under section 183(b)(2). Investment Credit
Section 48(a) allows an investment credit only with respect to certain personal property which qualifies for depreciation under section 167(a). Under section 167(a) a depreciation deduction is allowed for (1) property used in a trade or business or (2) property held for the production of income. Property such as petitioners' truck which is held in an activity not engaged in for profit is not depreciable under section 167(a) and therefore does not qualify for investment credit under section 48(a). Child Care Credit
Section 44A[2] allows a child care credit for certain "employment-related expenses" which include expenses paid for the care of a *275 qualifying individual if such expenses are incurred to enable the taxpayer to be gainfully employed. Inasmuch as petitioners were not gainfully employed in their Amway activities, they do not qualify for the credit. Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, during the year in issue unless otherwise indicated. All rule references are to the Tax Court Rules of Practice and Procedure unless otherwise provided.↩
2. Section 44A↩ was redesignated as section 21 for tax years beginning after December 31, 1983.